```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


UNITED CONSUMERS CLUB, INC.,      )
UNITED CONSUMERS CLUB             )
FRANCHISING CORPORATION, BETA     )
FINANCING COMPANY, and            )
NATIONAL MANAGEMENT               )
CORPORATION,                      )
                                  )
          Counterplaintiffs,      )
                                  )
     v.                           )    Case No.  2:97 cv 276
                                  )
MARK BLEDSOE, KELLY BLEDSOE       )
n/k/a BECKLEY, KELLMARK           )
CORPORATION d/b/a/ United         )
Consumers Club of Buffalo,        )
New York, ENG LIM, DENNIS         )
GAIN, PERSONA GRATA NORTH         )
AMERICA d/b/a United Consumers    )
Club of Providence, Rhode         )
Island, STEVEN ADOLPHI, CARRIE    )
ADOLPHI, S.A.C.A., INC., d/b/a    )
United Consumers Club of          )
Syracuse, New York, THOMAS        )
CALLAHAN, SR., THOMAS CALLAHAN,   )
JR., TEC ASSOCIATES d/b/a         )
United Consumers Club of          )
Baltimore, Maryland, JAMES        )
COCHRAN, MONICA COCHRAN,          )
COCHRAN MANAGEMENT SERVICES       )
d/b/a United Consumers Club of    )
Ann Arbor, Michigan, and the      )
EMANCIPATION TRUST,               )
                                  )
          Counterdefendants       )
```

OPINION AND ORDER

This matter is before the court on the Motion to Enforce Settlement Agreement filed by the counterplaintiffs, United Consumers Club, Inc. et. al., on May 23, 2007. For the reasons set forth below, this motion is **DENIED**.

Background

On August 7, 1997, multiple franchisees of the United Consumer Club brought a nine-count complaint against the franchisor. Over the course of the litigation, numerous claims and counterclaims have been resolved, and by February 2007, a series of counterclaims, including breach of contract and defamation, were set to go to trial on March 19, 2007. *See* Order, September 3, 2003 (DE 157); Opinion and Order, July 17, 2006 (DE 234); Opinion and Order, August 14, 2006 (DE 237); Opinion and Order, February 15, 2007 (DE 250).  At the end of February and into the first week of March 2007, the parties held settlement discussions and informed the court that the case had been resolved. The trial was vacated.

UCC, the counterplaintiffs, further indicated that on March 16 settlement funds had been provided to the counterdefendants' attorney. By April 9, the attorneys for the parties were exchanging a draft settlement agreement and learned that counterdefendant Mark Bledsoe, along with his associated company, Kellmark, and the Cochran counterdefendants, who no longer were subject to any claims following the court's February 15, 2007 Order, refused to sign the settlement agreement.

The Cochrans, Bledsoe, and their attorney, Mario Herman, each indicated that during settlement discussions no representations had been made that all of the counterdefendants had agreed to the settlement. Bledsoe stated that during the period after March 8, he made clear that his settlement terms included "the

2

return of certain funds that were held by UCC," reimbursement of forfeited travel expenses associated with attending the vacated trial, and the refusal to contribute to the settlement fund. According to Attorney Herman, Bledsoe's terms were rejected by UCC on March 15.

The Cochrans indicated that they never sought to participate in the settlement discussions and rejected UCC's offer to abandon its appeal rights against them in exchange for a contribution to the settlement funds.

In his affidavit, Herman states that from the beginning, the discussions contemplated settlement with less than all the parties, provided a majority of the counterdefendants settled. This is the first point of disagreement with UCC, which claims that at no time did it seek settlement with less than all counterdefendants. Further disputes regard whether Bledsoe's objections were communicated to UCC and rejected and whether the Cochrans were involved in any settlement discussion beyond their initial refusal to participate.

With their current motion, UCC seeks to enforce the settlement agreement by requiring Bledsoe and the Cochrans to sign the agreement or by finding that, regardless of their signatures, these parties are bound to the agreement's terms.

## Discussion

"A settlement agreement is a contract and as such, the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts gener-

3

ally." ***Laserage Technology Corporation v. Laserage Laboratories, Inc.***, 972 F.2d 799, 802 (7th Cir. 1992). Accordingly, a motion to enforce a settlement agreement is addressed as any other motion to enforce a contract. ***Carr v. Runyon***, 89 F.3d 327, 331 (7th Cir. 1996). The analysis is a matter of the state law applicable to contract analysis. *See e.g.* ***Dillard v. Starcon International, Inc.***, 483 F.3d 502, 506 (7th Cir. 2007).

In Indiana, a contract is formed on the basis of agreement on essential terms of the purported contract. ***Ochoa v. Ford***, 641 N.E.2d 1042, 1044 (Ind. App. 1994). The intent of the parties to form a contract is a factual matter based on the surrounding circumstances, and it is the burden of the party seeking to enforce the contract to prove its existence. ***Ochoa***, 641 N.E.2d at 1044. While a written, signed document is not essential to this proof, the party with this burden must show "some form of assent to the terms of the contract." ***Natare Corporation v. Aquatic Renovation Systems, Inc.***, 987 F.Supp. 695, 699 (S.D. Ind. 1997); ***International Creative Management, Inc., v. D & R Entertainment Company, Inc.***, 670 N.E.2d 1305, 1312 (Ind. App. 1996).

The factual disputes in this matter prevent the conclusion that any settlement, including oral, exists between UCC and either Bledsoe or the Cochrans. Bledsoe states that his terms, which included contributing nothing to the settlement funds and actually seeking some form of compensation from UCC, were rejected. The Cochrans deny that they participated in settlement

negotiations. The position of both parties is supported by the affidavit of their attorney.

In addition, UCC argues that its intent always was to bargain with the counterdefendants on an all-or-nothing basis and that the parties, or at least their attorney, was made aware of this condition. The parties' current contradiction of one another on this point is secondary to the fact that UCC has offered no evidence that Bledsoe or the Cochrans manifested any assent to the terms of a settlement. UCC's statement that it intended to deal with all of the parties cannot cure this deficiency. UCC's motion to enforce the settlement agreement requires proof of a valid contract between it and these counterdefendants. The only evidence UCC has submitted toward this burden is its own general statement that the parties agreed to settlement and that it believed it was settling with all parties. The court cannot find the existence of a contract on this basis. See *Ochoa*, 641 N.E.2d at 1045 ("[T]he circumstances demonstrated that the parties did not achieve a meeting of the minds and that to find an enforceable contract essential terms had to be supplied by the court."). Lacking proof that a contract was formed, the court cannot order its enforcement.

_____

For the foregoing reasons, the Motion to Enforce Settlement Agreement filed by the counterplaintiffs, United Consumers Club, Inc. et. al., on May 23, 2007 is **DENIED**.

5

ENTERED this 14th day of June, 2007

                                                s/ ANDREW P. RODOVICH
                                                  United States Magistrate Judge